UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

FRANK MERCEDES,

                                    Defendant.

No. 10-cr-74-2 (RJS)
<u>ORDER</u>

<u>RICHARD J. SULLIVAN</u>, Circuit Judge:

On April 29, 2020, Defendant Frank Mercedes filed an application for the appointment of *pro bono* counsel in connection with his contemplated habeas petition.  (Doc. No. 283.)  The Court denied that request without prejudice to renewal, noting that the application failed to provide a sufficient factual basis from which the Court could determine whether Mercedes's petition warranted the appointment of counsel.  (Doc. No. 285.)  On June 19, 2020, Mercedes's counsel on direct appeal filed a letter advising the Court of Mercedes's plan to renew his request for counsel and arguing that Mercedes's legal position will likely be of substance.  (Doc. No. 286.)  Mercedes's renewed request, which is dated June 19, 2020, was not received by the Court and docketed until June 26, 2020.  (Doc. No. 287.)  For the reasons set forth below, the renewed application is again denied without prejudice to renewal.

The legal standard applicable to the request is set forth in this Court's order of May 12, 2020 (Doc. No. 285) denying Mercedes's first request.  As noted in that order, there is no constitutional right to representation by counsel in civil or *habeas corpus* proceedings.  *Green v. Abrams*, 984 F.2d 41, 47 (2d Cir. 1993).  In considering the discretionary decision of whether to appoint counsel for *habeas* petitioners, *see* 18 U.S.C. 3006A(a), the Court must consider the standards set forth by

the Second Circuit for the appointment of counsel to indigent civil litigants pursuant to 28 U.S.C. § 1915.

The Court's first consideration is whether a party can afford to obtain counsel. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994). If the Court finds that a party cannot afford counsel, it then examines the merits of the case to "determine whether the indigent's position seems likely to be of substance." *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986); *see Cary v. Ricks*, No. 00 Civ. 8926 (RWS), 2001 WL 314654, at *4 (S.D.N.Y. Mar. 30, 2001) (applying *Hodge* factors to *habeas* petitioner's request for counsel). "In order to make such a determination, the Court must decide whether, from the face of the pleadings, the claims asserted by the plaintiff may have merit, or the plaintiff appears to have some chance of success." *West v. Brickman*, No. 07 Civ. 7260 (PKC) (DF), 2008 WL 3303773, at *1 (S.D.N.Y. Aug. 6, 2008) (citations and internal quotation marks omitted). Again, as noted in the Court's earlier order, although trial courts are to undertake "the preliminary assessment of likely merit . . . somewhat more generously since the unrepresented litigant might have difficulty articulating the circumstances that will indicate the merit that might be developed by competent counsel," the Second Circuit has nevertheless "cautioned that this requirement 'must be taken seriously.'" *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172, 174 (2d Cir. 1989). When assessing the merits, the Court must be mindful that "[e]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." *Id.* at 172.

Following the threshold merits inquiry, the Court then considers the additional factors set forth by the Second Circuit in *Hodge*, including:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal

2

issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

802 F.2d at 61–62; *see Cooper*, 877 F.2d at 172.  The Court should also be mindful of the Second Circuit's instruction that "[v]olunteer lawyer time is a precious commodity" and that "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause."  *Cooper*, 877 F.2d at 172.

The Court found in its May order that Mercedes has made a satisfactory showing of financial hardship.  (*See* Doc. No. 285 at 3.)  Turning to whether Mercedes's legal position will likely have substance – that is, whether the Mercedes has some chance of success – the Court concludes that the claims are unlikely to be successful.  In his letter in support of Mercedes's request for appointed counsel, Mercedes's appellate counsel argues that Mercedes will bring two claims of ineffective assistance of trial counsel that are likely to be of substance.  First, Mercedes intends to argue that trial counsel should have objected to the modified *Allen* charge that was given on the third day of jury deliberations, and should have moved for mistrial before and after that charge.  Second, Mercedes expects to argue that his trial counsel provided ineffective assistance by failing to adequately pursue exculpatory information relating to Mercedes's alleged alibi.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant's right to the assistance of counsel.  U.S. Const. amend.VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have Assistance of Counsel for his defence.").  When challenging the effectiveness of counsel's assistance, a party must demonstrate both of the prongs set forth in *Strickland v. Washington*, specifically, that (1) counsel's representation "fell below an objective standard of reasonableness" measured against "prevailing professional norms," and (2) this "deficient performance prejudiced the defense" in the sense that "there is a reasonable probability

3

that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   466 U.S. 668, 687–88, 694 (1984).   A court must reject a movant's ineffective assistance of counsel claim if it fails to meet either prong.  *Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (citing *Strickland*, 466 U.S. at 687, 690, 694, and *Bennett v. United States*, 663 F.3d 71, 84 (2d Cir. 2011)).

Even assuming that Mercedes could meet the first prong under *Strickland,* he likely cannot establish prejudice as to either ineffective assistance claim.  First, the Court is unpersuaded that Mercedes could establish prejudice stemming from his trial counsel's failure to object to the *Allen* charge or to move for a mistrial.  On direct appeal, Mercedes argued that the Court plainly erred in issuing an *Allen* charge.  The Second Circuit stated it "[did] not detect any error, much less plain error," and affirmed this Court's decision to issue the charge.  *United States v. Mercedes*, 771 F. App'x 73, 74 (2d Cir. 2019).  In reaching that conclusion, the Second Circuit noted that the Court "addressed the trial schedule at the beginning of the trial, noted that deliberations would depend on the jurors' holiday plans, and met individually with the only juror who expressed concern about her travel plans interfering with deliberations."  *Id.*  Moreover, the trial involved fewer than three full days of testimony and argument, and the jury deliberated less than two days.  The Court thus has no difficulty finding that even if Mercedes's trial counsel had objected to the *Allen* charge or moved for a mistrial, the Court would have issued the *Allen* charge as it did and denied the motion for a mistrial.

Second, it is unlikely that Mercedes can successfully show he was prejudiced by trial counsel's alleged failure to pursue exculpatory evidence relating to Mercedes's purported alibi.  According to his appellate counsel, Mercedes will argue in his *habeas* petition that trial counsel

4

should have made greater effort to secure admissible evidence that Mercedes "was in the Dominican Republic during the time frame when Velez-Gomez" – a witness who testified that Mercedes had contracted him for a killing – "claimed to have met with" Mercedes. (Doc. No. 286 at 3.) But such evidence would not have affected the outcome of the trial, since the trial record already contained ample evidence suggesting that Mercedes was outside the United States at the time of the shooting. Indeed, the government itself called a witness from the Department of Homeland Security Customs and Border Protection who acknowledged that Customs records showed that Mercedes returned to the United States on July 21, 1999, likely putting him out of the country at the time of the July 19, 1999 shooting. But the mere fact that Mercedes was in the Dominican Republic in the days before and after the murder would not have constituted an alibi, since the government never alleged that Mercedes was the shooter. Rather, the government's theory of the case was that Mercedes paid two hitmen to kill Jorge Rosario, who had stolen from Mercedes and was a friend of the murder victim. (Doc. No. 247 at 546:1–3 ("The defendant wasn't at the murder. . . . [T]he defendant hired people to commit the murder. He didn't need to be there.").) Mercedes's presence in the Dominican Republic at the time of the murder thus did not undermine any element of the offense. At best, evidence that Mercedes was outside the United States between July 16th and July 21st would have constituted impeachment evidence that contradicted the testimony of Velez-Gomez, one of the hitmen hired by Mercedes who testified that he met with Mercedes the day after the murder to collect his payment for the shooting.

But since Mercedes' trial lawyer already pointed out this very contradiction in summation, it's hard to see how Mercedes was prejudiced by counsel's alleged failure to obtain additional evidence of the same contradiction. (*See* Doc. No. 247 at 533:16–534:6 ("[T]hat second meeting . .

. didn't even happen, and the government's own witnesses tell you that because you heard from Mr. Rosario.  He saw Frank Mercedes every day around the building, but a few days before the murder he wasn't around.  Where did he go?  Mr. Chopra told us.  Remember the immigration official who came in and showed you his return flight on July 21st, two days after the murder? . . . That meeting [with Velez-Gomez] couldn't have happened . . .".)  As the Second Circuit noted in affirming Mercedes's conviction on direct appeal, "[t]he jury . . . had Mercedes's arguments that Velez-Gomez was not credible before it and nonetheless convicted Mercedes on all counts." *Mercedes*, 771 F. App'x at 74.  This was no doubt because the jury credited one of the government's two counterarguments regarding Mercedes's so-called "alibi."  First, the government acknowledged that Velez-Gomez – testifying at trial nearly 20 years after the murder – might simply have been mistaken about the precise dates of certain events.  (*See* Doc No. 247 at 506:20 ("Velez-Gomez isn't always great on dates."); *id.* at 549:19–24 ("[Y]ou know Velez-Gomez didn't keep a datebook.  He isn't exact on all of his dates. . . . This doesn't mean that he's lying, it means he's telling you what he remembers to the best of his memory.").)  Second, the government argued that it was at least possible that Mercedes could have returned to the United States the day after the murder using an assumed name.  Velez-Gomez testified that it was relatively easy at that time to get in and out of the Dominican Republic using fake names and travel documents.  (*Id.* at 515:3–515:6 ("Velez-Gomez told you how easy it was to get a fake passport, how easy it was to bribe officials in the Dominican Republic to stamp or not stamp or change a stamp in your passport . . .").)  In short, the jury considered the significance of the alleged inconsistency in Velez-Gomez's testimony and made a credibility determination that was consistent with the government's murder for hire theory.  *See Strickland*, 466 U.S. at 695 ("[A] court hearing an ineffectiveness claim must consider the totality

of the evidence before the judge or jury.")  The Court is therefore unpersuaded that additional records from the Dominican Republic that confirmed what U.S. Customs records already showed would have led to Mercedes's acquittal.

For these reasons, the Court finds that Mercedes has not met his threshold burden of showing a significant likelihood of merit as to his ineffective assistance of counsel claims. Accordingly, Mercedes's application for the appointment of counsel is HEREBY DENIED without prejudice to renewal at a later time if additional grounds for an application are presented to the Court.  Any renewed application should utilize the same standard-form application used here, to which Mercedes should append an affidavit establishing facts supporting the *Hodge* factors set forth above.  The Clerk of Court is respectfully directed to terminate the motion pending at document number 286.

SO ORDERED.

Dated:          June 30, 2020
                New York, New York

RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

7